**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ELTON SPICER** | § | |
|     **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **HARRIS COUNTY SHERIFF DEPUTIES** | § | **_____** |
| **AND/OR DETENTION OFFICERS** | § | |
|  **JOHN VICKERS, ANDREW PENA,** | § | |
| **TYREE SIMPSON, SGT. ARTHUR HAGAR** | § | |
| **and HARRIS COUNTY** | § | |
| | § | |
|     **Defendants.** | § | **JURY TRIAL DEMANDED** |

<u>**PLAINTIFF'S ORIGINAL COMPLAINT**</u>

      **NOW COMES, ELTON SPICER** Plaintiff, complaining of Defendants, the **HARRIS COUNTY SHERIFF DEPUTIES AND/OR DETENTION OFFICERS JOHN VICKERS, ANDREW PENA, TYREE SIMPSON, SGT. ARTHUR HAGAR, and HARRIS COUNTY** and for cause would show the Honorable Court as follows:

**I.**
**PARTIES AND SERVICE**

      1.    Plaintiff Elton Spicer TDCJ # 02467941, is an individual currently housed at the Texas Department of Criminal Justice Gist Unit. He is appearing in this case by and through the undersigned counsel.

      2.    Defendant, John Vickers, an individual employed by the Harris County Sheriff's Department as Detention Officer and may be served with this lawsuit at the Harris County Sheriff's Department, at 1200 Baker St., Houston, Texas 77002.

      3.    Defendant, Andrew Pena, an individual employed by the Harris County Sheriff's Department as Detention Officer and may be served with this lawsuit at the Harris County Sheriff's

Department, at 1200 Baker St., Houston, Texas 77002.

4.      Defendant, Tyree Simpson, an individual employed by the Harris County Sheriff's Department as Detention Officer and may be served with this lawsuit at the Harris County Sheriff's Department, at 1200 Baker St., Houston, Texas 77002.

5.      Defendant, Sgt. Arthur Hagar, an individual employed by the Harris County Sheriff's Department as Detention Officer and may be served with this lawsuit at the Harris County Sheriff's Department, at 1200 Baker St., Houston, Texas 77002.

6.      Defendant Harris County is the government entity responsible for the Harris County Sheriff's Office which is in turn responsible for the Harris County Jail where the Plaintiff suffered injuries  Defendant Harris County may be served with this Complaint by and through Harris County Judge Lina Hidalgo at 1001 Preston, Suite 911, Houston, Texas 77002

## II.
## JURISDICTION AND VENUE

7.      The subject matter in controversy is within the jurisdictional limits of this Court. This court has jurisdiction over the parties because Defendants are residents of Texas.

8.      Venue of this case is proper in Harris County, Texas is proper because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in Harris County and Harris County is located in the Southern District.

## III.
## FACTS

9.      This is an action brought by the Plaintiff, Elton Spicer against Defendants, John Vickers, Andrew Pena, Tyree Simpson, Sgt. Arthur Hagar and Harris County for the use of excessive force resulting in serious bodily injuries upon Plaintiff under the color of law in violation of his individual rights under the Fourth Amendment of the United States Constitution and in

violation of his civil rights pursuant to 42 U.S.C.§1983.

10.     On April 6, 2022, Plaintiff Spicer observed Harris County Detention officers respond to a disturbance in 6D1A.

11.     Plaintiff Spicer observed about 6-7 detention officers arrive and proceed to handcuff another detainee, Christopher Spears, and begin to punch and stomp on the handcuffed detainee.

12.     Plaintiff Spicer observed that Christopher Spears had been talking to a nurse and was not making any threatening gestures, resisting, or saying anything threatening.

13.     Plaintiff Spicer then made a statement to the officers that they were wrong for that.

14.     After Plaintiff Spicer made his statement, Officer Tyree Simpson turned his attention to Plaintiff and screamed at him "What you gonna do about it?." – Tyree Simpson

15.     At this point, Plaintiff Spicer removed his shirt and socks and proceeded to the day room.

16.     At that point, Officer Tyree Simpson turned to Plaintiff Spicer, came in, and ran up on Plaintiff and tried to intimidate him and said, "Do you want some too?."

17.     Not looking for trouble, Plaintiff Spicer put his hands up in the air. Defendant Simpson then attempted to grab Plaintiff, but Plaintiff pulled away and the officer began to hit Plaintiff with a series of sucker punches that left Plaintiff on the ground.

18.     Once Plaintiff Spicer was on the ground, Officer John Vickers began to stomp Plaintiff in the face and the head.

19.     Officers Tyree Simpson, John Vickers, and Andrew Pena continued to kick and punch Plaintiff Spicer all over his body.

20.     Officer John Vickers sprayed Plaintiff Spicer with mace and the Officer continued

to beat Plaintiff Spicer.

21.     The Officers attempted to cover up the beating by continuously yelling at Plaintiff to stop resisting but the Officers never attempted to restrain Plaintiff Spicer.

22.     As the officers continued to beat Plaintiff Spicer, Defendant Sgt. Arthur Hagar came in and kicked Plaintiff in the genitalia before leaving.

23.     Defendant Sgt. Arthur Hagar was in charge of Officers Simpson, Vickers, and Pena, and did nothing to make them stop. In fact, he joined in.

24.     Video cameras in the unit captured the beating of Plaintiff Spicer as well as other detainees.

25.     After the Officers finished beating Plaintiff Spicer, they handcuffed him and dragged him into the hallway and continued to taunt him.

26.     At this point, Plaintiff Spicer was left in handcuffs in the hallway with several other detainees before they all were escorted into a holding cell.

27.     Once Plaintiff Spicer was in the holding cell, another officer came in and escorted Plaintiff Spicer to medical where pictures of his injuries were taken.

28.     Plaintiff Spicer filed Grievance No. 44707 with the Harris County Jail regarding the beating. The grievance was referred to Internal Affairs in May. The Internal Affair Case Number is IA2022-00234.

29.     Plaintiff Spicer was eventually able to speak with Internal Affairs and was shown video footage of the beating.

30.     Harris County Officers were passing around the video of the beating further humiliating Plaintiff Spicer and exemplifying the culture of acceptance and permission for Harris County officers to use excessive force on detainees.

31.     Violating detainees' constitutional rights and acting with deliberate indifference seems to be a common tactic of the detention officers in the Harris County Jail.

32.     Another detainee Oscar Ochoa suffered an assault by Harris County Detention Officers just a month before Plaintiff was assaulted.

33.     A month after Plaintiff's assault, on May 6, 2022, Harris County officers failed to lock in detainee Henry Kmiec's wheelchair during transportation from the hospital back to the jail. A Harris County officer driving the transport van slammed on the brakes and Mr. Kmiec flew out of the chair and slammed into the van wall in front of him. Officers left him lying there on the van floor, while his wheelchair repeatedly hit him as they continued to drive. Officers did not stop and returned Mr. Kmiec to his chair and locked it in place until just before he arrived at the jail. Mr. Kmiec suffered injuries to his spine, shoulder, and ankle but did not receive any medical treatment despite his repeated requests.

34.     On May 17, 2022, Harris County Officers failed to protect Joseph Babino, when another detainee, Christopher Fears, who should have been separated from Mr. Babino, boiled water and attacked Mr. Babino resulting in second and third degree burns to his face and torso along with a laceration to his head. Mr. Babino spent *13 days* recovering at Memorial Hermann Hospital as a result of the attack, which would never have occurred if the detainees were separated *as required.*

35.     As recently as February 2024, the excessive violence by Harris County guards continues. A video was released to the public of detainee D'Alessandro Chavez-Sandoval being punched multiple times by several guards.

36.     Cause No. 4:23-cv-02886, filed in the Southern District, represents 22 detainees who either died or suffered serious injuries while in the custody of Harris County from late 2021-

mid 2023. The facts of that cause of action and those injuries are incorporated herein as set forth in the Complaint as an example of the ongoing practices and customs of Harris County violating the constitutional rights of those in its care.

37.     Cause No. 4:23-cv-04366, filed in the Southern District is another related case, wherein an detainee died while in the custody of Harris County. The facts of that cause of action and those injuries are incorporated herein as set forth in the Complaint as an example of the ongoing practices and customs of Harris County violating the constitutional rights of those in its care.

38.     Harris County Jail's culture of violence and prevalent policies, practices, and customs of failing to provide timely and adequate medical care, the institutionalization of excessive force by jail employees on detainees, and systemic understaffing and overcrowding of the jail were the direct cause and moving force of Mr. Spicer's injuries.

39.     Sheriff Gonzalez was the policymaker for Harris County with respect to the jail when Mr. Spicer suffered his injuries due to the jail's unconstitutional policies, customs, and practices.

## PRE-SUIT DISCOVERY EFFORTS

40.     On February 1, 2024, Plaintiff's counsel made an Open Records Request to obtain the video footage of Elton Spicer's incident, his grievances, and a copy of the internal affairs investigation.

41.     To-date, this request has not been fully disclosed to Plaintiff.

## IV.
## CAUSES OF ACTION

### COUNT 1 – *MONELL* PATTERN-OR-PRACTICE

42.     Plaintiff incorporates by reference the foregoing and succeeding paragraphs as if set forth herein.

43.     A county may be directly liable under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). For such, Plaintiff need only show (A) an official policy or custom, (B) that a policymaker can be charged with actual or constructive knowledge, and (C) a constitutional violation whose moving force is that policy or custom.[1]

*Official policy or custom*

44.     An official government policy can be proven in more than one way. It includes: (1) official decisions promulgated by a local government's lawmaking body; (2) longstanding practices so persistent and widespread as to fairly represent government policy or the force of law; and (3) the acts or policies of officials who by law or delegation possess final policymaking authority for the local government concerning the action alleged to have caused the particular constitutional or statutory violation at issue. *See Pembaur*, 475 U.S. at 480-81,106 S.Ct. 1292; *Monell,* 436 U.S. at 691, 98 S.Ct. 2018; *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 167-68, 90 S.Ct. 1598, 26 L.Ed.2d (1970); *Culbertson*, 790 F.3d at 628; *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc).

45.     Harris County has longstanding practices so persistent and widespread as to fairly represent government policy or force of laws that violate detainees' constitutional rights as exemplified by the numerous Plaintiffs who have filed suit for injuries or deaths that have occurred while in the custody of Harris County and the deficiencies identified by the Department of Justice.

---

[1] *Moore v. LaSalle Mgmt. Co.*, 41 F.4th 493, 509 (5th Cir. 2022); *Bishop v. Arcuri*, 674 F.3d 456, 467 (5th Cir. 2012); *see also Bartee v. Harris Cty.*, 2018 U.S. Dist. LEXIS 232945 *7-8 (S.D. Tex. 2018); *Releford v. City of Houston*, 2016 U.S. Dist. LEXIS 167749 *9 (S.D. Tex. 2016) (Ellison, K.).

46.     Sherriff Gonzalez possesses final policymaking authority for Harris County with respect to the Harris County Sheriff's Office which operates the Harris County Jail where the injury occurred.

47.     Harris County's policies or customs include:

- County Jail's culture of violence overcrowding, understaffing, inadequate supervision and , and prevalent policies, practices, and customs encouraging officers to act in a "culture that quickly leads to physical altercation," to use more force than necessary to subdue an detainee, to use improper force techniques that are more likely than not to lead to serious bodily injury, that encourages an unnecessarily large number of officers to subdue detainees without any attempt to coordinate their respective efforts without repercussion, that encourages officers to utilize excessive force when the detainee fails to comply with verbal orders and/or physical forces without repercussion, that encourages officers to create  scenarios that victims cannot comply with and unnecessarily harm them without repercussion, that encourage officers to not adequately document uses of force, that encourages supervisors to not report or discipline uses of force, that encourage officers to use force on subdued and restrained detainees as a punishment and retaliation tactic, to use force as a means of sending a message to detainees despite no justifiable reason for the use of force, to fail to de-escalate or even attempt to use de-escalation techniques, and to forego reasonable non-violent techniques was a moving force in the injury of Plaintiff Spicer.

- Harris County has encouraged this policy by repeatedly determining that the actions of jailers which constitute an unnecessary use of force were justified and within the guidelines of their policies, procedures, and their interpretation of the law.

- Harris County's rampant practice and policies of understaffing and overcrowding the jail encouraged violence by officers against detainees, caused additional psychological and physical stresses on officers which leads to violent outbursts directed at detainee's, prevented a  correct proportion of guards to carry out the necessary functions of the jail safely which encourages officers to use the quickest methods to get results out of detainees including excessive violence, makes the employees "overworked, moral is poor, bad decisions happen when [understaffing is] occurring," impedes Plaintiffs' access to medical care, impedes the officers ability to provide medical care timely, impedes the jailer's ability and/or willingness to observe and monitor detainees, impedes the jailer's ability and/or willingness to deter detainee on detainee or officer on detainee violence, reduces the ability of officers to escort detainees safely, and results in insufficient officers to carry out even minute functions of the jail safely, which resulted in the injury of Plaintiff.

- It was highly predictable that Harris County employees would follow these ongoing policies and practices. The known and obvious consequences of Harris County's policies and practices identified above is that detainees would suffer significant injuries and death. The DOJ, TCJS, and even the Sheriff as explained above have all been provided notice of the pitfalls and flaws of these policies and the likely consequences of those policies causing constitutional violations.

- Harris County acted with deliberate, callous, conscious, and unreasonable indifference to Plaintiff's constitutional rights by being aware of the known and obvious consequences of their policies and practices but continuing to authorize, tolerate, and ratify the

implementation of the custom and practice resulting in the deaths and injuries of Plaintiffs.

- Each of the policies taken above and in context of each Plaintiffs' injuries were promulgated, enforced, ratified, and created by Harris County's policymakers including Sheriff Gonzalez. Harris County has been aware of these policies, practices, and customs for the past 15 years.[2]

*Constructive or actual knowledge by policy maker*

48.     Sherriff Gonzalez was aware of the policy or customs of Harris County. On information and belief, there is persistent pattern and number of detainees that have filed grievances regarding the violations and treatment of detainees through the Harris County Jail's Kiosk. The electronic kiosk inside the jail is the the only for detainees to make formal complaints. Due to its electronic format, detainees have no way to keep a copy of their grievances or track them after they are submitted. A system that aids in hiding the constitutional violations running rampant within the Harris County Jail.

49.     Sheriff Gonzalez as well as Harris County Mayors and Sheriffs prior to Sheriff Gonzalez were made aware of the constitutional failures of the Harris County Jail beginning as early as 2009 when the Department of Criminal Justice began its investigation into the jail and making reports.[3]

50.     The DOJ report found that "For security matters in particular, the Jail lacks: (1) a minimally adequate system for deterring excessive use of force, and (2) an adequate plan for managing a large and sometimes violent detainee population" (pg 14).

---

[2] [2] Taken from Case No. 4:23-cv-02886; *Octavia Wagner v. Harris County, Texas*; In the US District Court for the Southern District of Texas- Houston Division.
[3] Plaintiff asks the Court to take judicial notice of the Department of Justice report from June 4, 2009 ("DOJ Report").

51.     The DOJ report also noted that "As a result of systemic deficiencies including a lack of appropriate policies and training, the Jail exposes detainees to harm or risk of harm from excessive use of force" and "When supervisors review use of force incidents, they do not have ready access to important evidence. Instead, they appear to rely excessively on officer statements to determine what happened during an incident" (pg. 15).

52.     In reviewing excessive force, the DOJ noted "use of force occurs at the Jail without adequate review, and Jail data regarding use of force levels cannot be considered reliable. We believe that the incidents noted during our review may only reflect part of what is really occurring within the facility" (pg. 15).   The DOJ further noted that "as a result of systemic deficiencies including a lack of appropriate policies and training, the Jail exposes detainees to harm or risk of harm from excessive use of force." *Id.*

53.     In terms of reviewing excessive force the DOJ also found "Notably, when force was investigated by supervisors, it appears that the supervisors often determined that staff's use of force was appropriate without obtaining independent medical review or multiple witness statements." *Id.*

54.     The DOJ report also put Harris County on notice regarding overcrowding exacerbating the problems in the Jail. Specifically, it was noted "The Texas Jail Commission's decision to grant the County waivers to house approximately 2000 detainees more than the Jail's original design capacity are concerning on its face….. (1) the Jail's crowded conditions currently exacerbate many of the constitutional deficiencies identified in this letter; and (2) the Jail needs a more comprehensive, systemic approach to dealing with a large and growing Jail population." (pg. 17).

55.     Despite the DOJ report being made in 2009, the same problems continue to persist. It was recently reported that "Back in September 2022, the Texas Commission on Jail Standards

determined the Harris County Jail was violating statewide safety standards — a determination that has held true for more than a year now. Among the plethora of violations, commission found that the jail wasn't providing timely medical care and was struggling to maintain the state-mandated staffing ratio of one detention officer for every 48 persons held in the jail.(https://www.tcjs.state.tx.us/non-compliant-jails/)" [4]

56.     It was also reported that "Since December, the Texas Commission on Jail Standards has been reducing the Harris County Jail's approved capacity by 144 beds each month in response to persistent understaffing." *Id*.

57.     Alarmingly, 19 people died in the Harris County Jail in 2023, and 27 died in 2022, "the highest number in nearly two decades, according to county records and data from the Texas Justice Initiative." *Id.*

58.     The Houston Chronicle reviewed the growing use of force in the Harris County Jail and reviewed "the Harris County Sheriff's Office's self-reported violent incident report data from May of each year from 2020 through 2023. The records indicate that "use of force leading to bodily injury" increased by nearly 200 percent from 2020 to 2023, with 17 incidents in May 2020, 39 incidents in May 2021, 48 incidents in May 2022 and 50 incidents in May 2023. Assaults increased from 577 in May 2020 to 803 in May 2023—a 39 percent increase—over the same period."[5]

59.     It is evident that Harris County had actual or constructive knowledge of the continued pattern, culture, and custom of constitutional violations at the Harris County Jail to include violence, excessive force, inadequate medical care, and denial of medical care.

        *Constitutional violation whose moving force is that policy or custom.*

---

[4] https://www.houstonpublicmedia.org/articles/news/criminal-justice/2024/02/02/476187/state-officials-have-been-reducing-the-harris-county-jails-bed-c%E2%80%80A6 .

[5] https://www.chron.com/news/houston-texas/article/harris-county-jail-texas-18208700.php

60.     The constitutional rights of a pretrial detainee, like the Decedent, flow from the procedural and substantive due process guarantees of the Fourteenth Amendment of the U.S. Constitution. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996); *Valencia v. Wiggins*, 981 F.2d 1440, 1443-45 (5th Cir.), cert. denied, 113 S. Ct. 2998 (1993); *see also Salcido v. Harris Cty.*, 2018 U.S. Dist. LEXIS 169034 *102 (S.D. Tex. 2018) (finding issues of material fact precluded summary judgment on denial of medical care claim); *Wynn v. Harris Cty.*, 556 F. Supp. 3d 645, 655 (S.D. Tex. 2021) (Ellison, K.) (finding that, under the Due Process Clause of the Fourteenth Amendment, Harris County jail pre-trial detainees have a constitutional right to "basic human needs, including medical care and protection from harm").

61.     Indeed, it is well established that, when the State or arm of the State takes a person into custody and holds the person in a jail involuntarily, against its will, the U.S. Constitution imposes upon the State numerous corresponding duties to assume some responsibility for that person's safety and general well-being. Helling v. McKinney, 509 U.S. 25, 31 (1993). The ultimate constitutional duty of the government in those circumstances is to assume some responsibility for the safety and general well-being of persons whose state-occasioned confinement renders them unable to fend for themselves. Hare v. City of Corinth, 74 F.3d 633, 644 (5th Cir. 1996).

62.     The use of excessive force has long been held to be a constitutional violation. "In assessing a claim of excessive force, courts ask 'whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them.' " *Lombardo v. City of St. Louis, Missouri*, —— U.S.——, 141 S. Ct. 2239, 2241, 210 L.Ed.2d 609 (2021) (per curiam) (quoting **\*459** *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Factors such as "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of

force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting," as well as other relevant circumstances "may bear on the reasonableness or unreasonableness of the force used." *Kingsley v. Hendrickson*, 576 U.S. 389, 397, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015). "The *Graham*, 490 U.S. at 396, 109 S.Ct. 1865.

63.     Harris County guards have a pattern of using excessive force that is not reasonable. Plaintiff was not resisting or acting in any way that could be seen as threat. As seen from the other incidents in the related lawsuits mentioned earlier, Harris County guards often use force that is unreasonable under the relevant circumstances. Harris County knew about these incidents because of lawsuits and internal complaints filed by offenders.

64.     For moving force purposes, a plaintiff need only show that the municipal action or inaction was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. Bartee v. Harris Cty., 2018 U.S. Dist. LEXIS 232945 *9 (S.D. Tex. 2018). A plaintiff meets the culpability by showing if the municipality adopted a policy with deliberate indifference to the "known or obvious consequences" that a constitutional violation would result. Id. Bartee v. Harris Cty., 2018 U.S. Dist. LEXIS 232945 *9 (S.D. Tex. 2018). The causal link in the present case is clear. Defendant's policies of encouraging violence, overcrowding, understaffing, inadequate supervision, and poor training as recited above were known to Defendant as demonstrated above and is as obvious that a constitutional violation would result because the DOJ report already put Defendant on notice that constitutional violations were occurring. In the present case, Defendants actions cause Plaintiff to be deprived of his constitutional right to be free from the use of excessive force when guards assaulted Plaintiff.

*Pattern of Incidents*

65.     Constitutional challenges by pretrial detainees may also be brought under a conditions of confinement theory. Salcido v. Harris Cty., 2018 U.S. Dist. LEXIS 169034 *125 (S.D. Tex. 2018). A conditions of confinement theory would be based on "Harris County's policies, customs, and practices" such that it is an attack on the "general conditions, practices, rules, or restrictions of pretrial confinement." Id., *125. A plaintiff challenging jail conditions needs only demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs. Id. (emphasis added). This pattern may include incidents preceding and succeeding Plaintiff's incident. *Infra*.

66.     Plaintiff has demonstrated the pervasive pattern by incorporating by reference the facts of two related lawsuits in the Southern District;  Cause No. 4:23-cv-02886 and 4:23-cv-04366. Plaintiff is also aware of constitutional violations suffered by detainees, Oscar Ochoa, Joseph Babino, and Henry Kmiec while they were in custody. In addition, Plaintiff has shown that by Harris County's own reporting, the number of incidents of violence and deaths inside Harris County Jail has been increasing in recent years.

### Failure to Train and/or Implement and/or Supervise Proper Policies and Procedures
### By the Harris County Sheriff's Department
### Count II
### 42 U.S.C. § 1983

67.     Plaintiff incorporates by reference the foregoing and succeeding paragraphs as if set forth herein. Prior to April 5, 2022, Harris County knew or should have known that Defendants Tyree Simpson, John Vickers, Andrew Pena, and Sgt. Arthur Hagar exhibited a pattern of escalating encounters with the public.

68.     Plaintiff would show that Harris County's response was to require all officers to take courses or a similar type of training to de-escalate a hostile situation. This particular

training helps officers handle mental health crises, de-escalation techniques and how best to interact with someone in a state of aggression.

69.     Defendants Tyree Simpson, John Vickers, Andrew Pena, and Sgt. Arthur Hagar and other correctional officers at the scene of the incident were acting under color of law and acting pursuant to customs, practices and policies of the Harris County Sheriff Department in regard to the use of excessive force as authorized and/or ratified by the Policymakers, specifically the Harris County Sheriff's Department.

70.     Plaintiff Elton Spicer was deprived of rights and privileges secured to them by the United States Constitution and by other laws of the United States, by the Harris County Sheriff's Department failing to provide proper training, adequate supervision or discipline when dealing with individuals such as Elton Spicer in violation of 42 U.S.C. §1983 and related provisions of federal law and in violation of the above cited constitutional provisions.

71.     With respect to the claims made the basis of this lawsuit, Harris County failed to adequately train its correctional officers on how to deal with individuals in crisis, de-escalation, and/or the use of excessive force. The failure to train its correctional officers in a relevant respect reflects a deliberate indifference of Harris County to the rights of the County Jail's inhabitants and is actionable under 42 U.S.C. § 1983.

72.     With respect to the claims made the basis of this lawsuit, Harris County failed to provide adequate implementation policies and supervision its correctional officers on how to deal with individuals in crisis, de-escalation and/or the use of excessive force. The failure to train its correctional officers in a relevant respect reflects a deliberate indifference of Harris County to the rights of the County Jail's inhabitants and is actionable under 42 U.S.C. § 1983.

73.     Harris County's failure to adequately supervise their correctional officers in the implementation of an adequate policy for its officers on how to deal with individuals and the subsequent use of excessive force reflects deliberate indifference by the Policymakers and reckless and conscious disregard for the obvious risk that correctional officers would use excessive force on detainees and made the violations of Plaintiff Oscar Ochoa's constitutional rights.

74.     Plaintiff would show that Defendants' actions were the result of, or within the scope of, wrongful and reckless customs, culture, policies, practices and/or procedures for which  Harris County knew or should have known but never provided the requisite and proper training. Harris County had been put on notice by the DOJ report in 2008, the reports by the Texas Jails Commission, lawsuits that have been filed against Harris County, and by internal complaints/grievances made by detainees at the Harris County Jail.

75.     On information and belief, Defendants Tyree Simpson, John Vickers, Andrew Pena, Sgt. Arthur Hagar and Harris County, acting through official policies, practices, and customs, and with deliberate, callous, and conscious indifference to the constitutional rights of Ochoa and Spicer and failed to implement and/or enforce the policies, procedures; and practices necessary to provide constitutionally adequate protection and assistance to Plaintiffs Oscar Ochoa and Elton Spicer during the incident and implemented policies, procedures, and practices which actually interfered with or prevented with or prevented Plaintiffs from receiving the protection, assistance and care they deserved.

76.     For instance, the following conduct, policies, and customs, inter alia, by Defendants violated Plaintiffs constitutional rights:

a.     Harris County's failure to adequately train, supervise or discipline its correctional

officers who commit a wrongful act or attempt to cover-up a wrongful act of a fellow officer;

b.      Defendants' policy on the proper use of excessive force;

c.      Defendants' inadequate training on how to deal with or interact with detainees;

d.      Using excessive force against Plaintiff Elton Spicer while he was unarmed;

e.      Using excessive force against Plaintiff Elton Spicer although they posed no immediate threat;

77.      In addition, Defendant Harris County, as applicable, failed and refused to implement customs, policies, practices, or procedures, and failed to train its personnel adequately on the appropriate policies, practices, or procedures regarding the proper use of excessive force. In so doing, Defendants Tyree Simpson, John Vickers, Andrew Pena, and Sgt. Arthur Hagar knew that they were acting against the clear dictates of current law and knew that as a direct consequence of their deliberate decisions, the very situation that occurred.

78.      Harris County's failure to properly train and discipline its deputies was the proximate cause of the violations of Plaintiffs' constitutional rights.

**Excessive Force by Defendants (Individually and in their official capacity)**
**COUNT lII**
**42U.S.C. § 1983**

79.      Plaintiff incorporates by reference the foregoing and succeeding paragraphs as if set forth herein. Plaintiff would show that Defendants' actions on the occasion in question were wrongful, malicious, and reckless in depriving Plaintiff of his constitutional rights, as alleged more fully below.

80.     Plaintiff would show that at all times material hereto, each of the Defendants had a duty to avoid the infliction of unjustified bodily injury to Plaintiff Elton Spicer; to protect his bodily integrity; and to not trample on his constitutional rights.

81.     Defendants Tyree Simpson, John Vickers, Andrew Pena, and Sgt. Arthur Hagar, without justification and the need to do so, used excessive force described above to injure Plaintiff Elton Spicer.

82.     Defendants Tyree Simpson, John Vickers, Andrew Pena, and Sgt. Arthur Hagar were not provoked when they attacked Plaintiff Elton Spicer for no lawful or justifiable reason. The excessive force used by Defendants was not reasonable, justified nor was it necessary under the circumstances.

83.     Defendants Tyree Simpson, John Vickers, Andrew Pena, and Sgt. Arthur Hagar's actions were not objectively reasonable because they followed a procedure designed to inflict excessive force in restraining individuals in a non-life-threatening situation.

84.     Plaintiff would show that Defendants Tyree Simpson, John Vickers, Andrew Pena, and Sgt. Arthur Hagar denied Plaintiff Elton Spicer his right to be free from the use of excessive force in violation of the Fourth Amendment to the United States Constitution.

85.     The force used by Defendants Tyree Simpson, John Vickers, Andrew Pena, and Sgt. Arthur Hagar was unnecessary, excessive, and unreasonable under the circumstances, as Plaintiff Elton Spicer did not pose an immediate threat to the safety of Defendants or others and the use of such excessive force was unnecessary. Plaintiff had not made any threatening gestures, movements, or verbalized any threats.

86.     Defendants Tyree Simpson, John Vickers, Andrew Pena, and Sgt. Arthur

Hagar embarked on a willful, malicious, reckless, and outrageous course of conduct that was intended to cause and caused Plaintiff Elton Spicer to suffer extreme and severe physical, mental, and emotional distress, agony, and anxiety.

87.    Harris County is liable because it has established policies and practices which allow officers to demean, harass, and beat detainees without any regard nor worry.

88.    As a result of these Constitutional violations to Plaintiff Elton Spicer and the injuries they sustained, Plaintiffs seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

### Failure to Adequately Supervise or Discipline and Ratification
### COUNT IV

62.   Plaintiff incorporates by reference the foregoing and succeeding paragraphs as if set forth herein

63. On Plaintiffs governmental liability claim against Harris County for failing to supervise and/or discipline its correction and detention officers for their violations and the resulting of supervision in the following manners:

a.      Harris County failed to adequately supervise and/or discipline its employees in handling usual and recurring situations in which they dealt;

b.      Harris County was deliberately indifferent to the need to supervise and/or discipline its correctional officers and/or employees adequately; and

c.      the failure to adequately supervise and/or discipline its correctional officers proximately caused the deprivation of Plaintiffs' constitutional rights.

64. As a direct and proximate result of Harris County's failure to adequately supervise or discipline its correctional officers, Plaintiff has suffered damages.

65. Additionally, and in the alternative, the conduct of Defendants Tyree Simpson, John Vickers, Andrew Pena, and Sgt. Arthur Hagar were done with malice. As such, Plaintiff

requests punitive and exemplary damages to deter this type of conduct in the future. In the alternative, such heedless and reckless disregard of Plaintiff's rights, safety, and welfare are more than momentary thoughtlessness, inadvertence, or misjudgment. Such unconscionable conduct goes beyond ordinary negligence, and as such Plaintiffs request punitive and exemplary damages be awarded against Defendants Tyree Simpson, John Vickers, Andrew Pena, Sgt. Arthur Hagar, and Harris County in a sum that is within the jurisdictional limits of this court.

## V.
## DAMAGES ALL DEFENDANTS

66.     Plaintiff incorporates by reference paragraphs 1 through 52 as if fully set forth herein.

67.   Defendants' acts and/or omissions were a proximate cause of the injuries to Plaintiffs.

68.     As a direct and proximate result of Harris County's failure to adequately supervise or discipline its correctional officers, Plaintiff has suffered damages.

68.     Additionally, and in the alternative, the conduct of Defendants Tyree Simpson, John Vickers, Andrew Pena, and Sgt. Arthur Hagar were done with malice. As such, Plaintiffs request punitive and exemplary damages to deter this type of conduct in the future. In the alternative, such heedless and reckless disregard of Plaintiffs rights, safety, and welfare are more than momentary thoughtlessness, inadvertence, or misjudgment. Such unconscionable conduct goes beyond ordinary negligence, and as such Plaintiffs request punitive and exemplary damages be awarded against the Defendant in a sum that is within

the jurisdictional limits of this court.

## VI.
## DAMAGES ALL DEFENDANTS

69.     Plaintiff incorporates by reference the foregoing and succeeding paragraphs as if set forth herein. Defendants' acts and/or omissions were a proximate cause of the following Injuries suffered by Plaintiff and decedent:

a.      Actual damages;

b.      Loss of affection, consortium, comfort, financial assistance, protection, affection, and care;

c.      Pain and suffering and mental anguish suffered by Plaintiff;

d.      Mental anguish and emotional distress suffered by Plaintiff;

e.      Loss of quality of life;

f.      Loss of service;

h.      Loss of future earnings and contributions to Plaintiff;

1.      Exemplary and punitive damages as well as costs of court;

J.      Pursuant to 42 U.S.C. §1988, and other applicable laws, Plaintiff should be awarded reasonable attorney's fees for the preparation and trial of this cause of action, and for its appeal, if required;

k.      Prejudgment interest; and

l.      Post judgment interest.

70.     Plaintiff seeks unliquidated damages in an amount that is within the jurisdictional limits of the court.

## VII.

## COSTS AND ATTORNEY FEES

71. Plaintiff incorporates by reference paragraphs 1 through 52 as if fully set forth

herein. Plaintiffs are entitled to an award of attorney fees and costs under 42 U.S.C. § 1

988(b). As such, Plaintiffs request the Court to award costs and attorney fees incurred in

Plaintiffs prosecution of this litigation.

## VIII.
## JOINT AND SEVERAL LIABILITY

72.     Plaintiff incorporates by reference the foregoing and succeeding paragraphs as if

set forth herein. Plaintiffs would show that the Defendants were jointly and severally liable for the

gross negligence, which was the proximate cause of Plaintiffs injuries.

## VX.
## CONDITIONS PRECEDENT

73.     Plaintiff reserves their rights to plead and prove the damages to which they are

entitled to at the time of trial. All conditions to Plaintiff's recovery have been performed or

have occurred.

## X.
## TRIAL BY JURY

74.     Plaintiffs demand trial by jury.

## XI.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to

appear and answer herein; that upon final trial hereof Plaintiff has and recovers judgment from

Defendants; actual damages, exemplary damages, pre-judgment interest at the legal rate; interest

on said judgment at the legal rate; costs of court; and such other and further relief, both general and special, at law and in equity, to which Plaintiffs are justly entitled.

Respectfully submitted,

*Tanika J. Solomon*

_____

Tanika J. Solomon
Texas Bar No. 24057713
Shantelle L. Jones
Texas Bar No. 24136932
S.D. Bar No. 3866430
Email: attorney@tjsololaw.com
shantelle@tjsololaw.com
2120 Welch Street
Houston, Texas 77019
Tel. (713) 640-5956
Fax. (713) 640-5944
Attorneys for Elton Spicer