## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **ELTON SPICER** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **HARRIS COUNTY SHERIFF DEPUTIES** | § | **4:24-cv-01170** |
| **AND/OR DETENTION OFFICERS** | § | |
| **JOHN VICKERS, ANDREW PENA,** | § | |
| **TYREE SIMPSON,  SGT. ARTHUR HAGAR** | § | |
| **and HARRIS COUNTY** | § | |
| | § | |
| **Defendants.** | § | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COMES, **ELTON SPICER** Plaintiff, complaining of Defendants, the **HARRIS COUNTY SHERIFF DEPUTIES AND/OR DETENTION OFFICERS JOHN VICKERS, ANDREW PENA, TYREE SIMPSON, SGT. ARTHUR HAGAR, and HARRIS COUNTY** and for cause would show the Honorable Court as follows:

### I.
### PARTIES AND SERVICE

1.    Plaintiff Elton Spicer TDCJ #  02467941, is an individual currently housed at the Texas Department of Criminal Justice Gist Unit. He is appearing in this case by and through the undersigned counsel.

2.    Defendant, John Vickers, an individual previously employed by the Harris County Sheriff's Department as Detention Officer. Defendant's address is currently unknown.

3.    Defendant, Andrew Pena, an individual employed by the Harris County Sheriff's Department as Detention Officer and has made an appearance.

4.    Defendant, Tyree Simpson, an individual employed by the Harris County Sheriff's

Department as Detention Officer and has made an appearance.

5.     Defendant, Sgt. Arthur Hagar, an individual employed by the Harris County Sheriff's Department as Detention Officer and has made an appearance.

6.     Defendant Harris County is the government entity responsible for the Harris County Sheriff's Office which is in turn responsible for the Harris County Jail where the Plaintiff suffered injuries  Defendant Harris County has filed a Motion to Dismiss.

## II.
## JURISDICTION  AND VENUE

7.     The subject matter in controversy is within the jurisdictional limits of this Court. This court has jurisdiction over the parties because Defendants are residents of Texas.

8.     Venue of this case is proper in Harris County, Texas is proper because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in Harris County and Harris County is located in the Southern District.

## III.
## FACTS

9.     This is an action brought by the Plaintiff, Elton Spicer against Defendants, John Vickers, Andrew Pena, Tyree Simpson, Sgt. Arthur Hagar and Harris County for the use of excessive force resulting in serious bodily injuries upon Plaintiff under the color of law in violation of his individual rights under the Fourteenth Amendment of the United States Constitution and in violation of his civil rights pursuant to 42 U.S.C.§1983.

10.     On April 6, 2022, Plaintiff Spicer observed Harris County Detention officers respond to a disturbance in 6D1A.

11.     Plaintiff Spicer observed about 6-7 detention officers arrive and proceed to handcuff another detainee, Christopher Spears, and begin to punch and stomp on the handcuffed

detainee.

12.     Plaintiff Spicer observed that Christopher Spears had been talking to a nurse and was not making any threatening gestures, resisting, or saying anything threatening.

13.     Plaintiff Spicer then made a statement to the officers that they were wrong for that.

14.     After Plaintiff Spicer made his statement, Officer Tyree Simpson turned his attention to Plaintiff and screamed at him "What you gonna do about it?." – Tyree Simpson

15.     At this point, Plaintiff Spicer removed his shirt and socks and proceeded to the day room.

16.     At that point, Officer Tyree Simpson turned to Plaintiff Spicer, came in, and ran up on Plaintiff and tried to intimidate him and said, "Do you want some too?."

17.     Not looking for trouble, Plaintiff Spicer put his hands up in the air. Defendant Simpson then attempted to grab Plaintiff, but Plaintiff pulled away and the officer began to hit Plaintiff with a series of sucker punches that left Plaintiff on the ground.

18.     Once Plaintiff Spicer was on the ground, Officer John Vickers began to stomp Plaintiff in the face and the head.

19.     Officers Tyree Simpson, John Vickers, and Andrew Pena continued to kick and punch Plaintiff Spicer all over his body.

20.     Officer John Vickers sprayed Plaintiff Spicer with mace and the Officer continued to beat Plaintiff Spicer.

21.     The Officers attempted to cover up the beating by continuously yelling at Plaintiff to stop resisting but the Officers never attempted to restrain Plaintiff Spicer.

22.     As the officers continued to beat Plaintiff Spicer, Defendant Sgt. Arthur Hagar came in and kicked Plaintiff in the genitalia before leaving.

23.    Defendant Sgt. Arthur Hagar was in charge of Officers Simpson, Vickers, and Pena, and did nothing to make them stop. In fact, he joined in.

24.    Video cameras in the unit captured the beating of Plaintiff Spicer as well as other detainees.

25.    After the Officers finished beating Plaintiff Spicer, they handcuffed him and dragged him into the hallway and continued to taunt him.

26.    At this point, Plaintiff Spicer was left in handcuffs in the hallway with several other detainees before they all were escorted into a holding cell.

27.    Once Plaintiff Spicer was in the holding cell, another officer came in and escorted Plaintiff Spicer to medical where pictures of his injuries were taken.

28.    Plaintiff suffered from bruising and swelling. He suffered injury to his eyes and mouth. He still suffers eye pain and his two bottom teeth still feel loose.

29.    Plaintiff Spicer filed Grievance No. 44707 with the Harris County Jail regarding the beating. The grievance was referred to Internal Affairs in May. The Internal Affair Case Number is IA2022-00234.

30.    Plaintiff Spicer was eventually able to speak with Internal Affairs and was shown video footage of the beating.

31.    Harris County Officers were passing around the video of the beating further humiliating Plaintiff Spicer and exemplifying the culture of acceptance and permission for Harris County officers to use excessive force on detainees.

32.    Violating detainees' constitutional rights and acting with deliberate indifference seems to be a common tactic of the detention officers in the Harris County Jail.

33.    Another detainee Oscar Ochoa suffered an assault by Harris County Detention

Officers just a month before Plaintiff was assaulted.

34.     A month after Plaintiff's assault, on May 6, 2022, Harris County officers failed to lock in detainee Henry Kmiec's wheelchair during transportation from the hospital back to the jail. A Harris County officer driving the transport van slammed on the brakes and Mr. Kmiec flew out of the chair and slammed into the van wall in front of him. Officers left him lying there on the van floor, while his wheelchair repeatedly hit him as they continued to drive. Officers did not stop and returned Mr. Kmiec to his chair and locked it in place until just before he arrived at the jail. Mr. Kmiec suffered injuries to his spine, shoulder, and ankle but did not receive any medical treatment despite his repeated requests.

35.     On May 17, 2022,  Harris County Officers failed to protect Joseph Babino, when another detainee, Christopher Fears, who should have been separated from Mr. Babino, boiled water and attacked Mr. Babino resulting in second and third degree burns to his face and torso along with a laceration to his head. Mr. Babino spent *13 days* recovering at Memorial Hermann Hospital as a result of the attack, which would never have occurred if the detainees were separated *as required.*

36.     As recently as February 2024, the excessive violence by Harris County guards continues. A video was released to the public of detainee D'Alessandro Chavez-Sandoval being punched multiple times by several guards.

37.     Cause No. 4:23-cv-02886, filed in the Southern District, represents 22 detainees who either died or suffered serious injuries while in the custody of Harris County from late 2021-mid 2023. The facts of that cause of action and those injuries are incorporated herein as set forth in the Complaint as an example of the ongoing practices and customs of Harris County violating the constitutional rights of those in its care.

38.     Cause No. 4:23-cv-04366, filed in the Southern District is another related case, wherein an detainee died while in the custody of Harris County. The facts of that cause of action and those injuries are incorporated herein as set forth in the Complaint as an example of the ongoing practices and customs of Harris County violating the constitutional rights of those in its care.

39.     Harris County Jail's culture of violence and prevalent policies, practices, and customs of failing to provide timely and adequate medical care, the institutionalization of excessive force by jail employees on detainees, and systemic understaffing and overcrowding of the jail were the direct cause and moving force of Mr. Spicer's injuries.

40.     Sheriff Gonzalez was the policymaker for Harris County with respect to the jail when Mr. Spicer suffered his injuries due to the jail's unconstitutional policies, customs, and practices.

### PRE-SUIT DISCOVERY EFFORTS

41.     On February 1, 2024, Plaintiff's counsel made an Open Records Request to obtain the video footage of Elton Spicer's incident, his grievances, and a copy of the internal affairs investigation.

42.     To-date, this request has not been fully disclosed to Plaintiff.

### IV.
### CAUSES OF ACTION

### COUNT 1 – *MONELL* PATTERN-OR-PRACTICE

43.     Plaintiff incorporates by reference the foregoing and succeeding paragraphs as if set forth herein.

44.     A county may be directly liable under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). For such, Plaintiff need only show (A) an official policy or custom, (B) that a policymaker can be charged with actual or constructive knowledge, and (C) a constitutional violation whose moving force is that policy or custom.[1]

*Official policy or custom*

45.     An official government policy can be proven in more than one way. It includes: (1) official decisions promulgated by a local government's lawmaking body; (2) longstanding practices so persistent and widespread as to fairly represent government policy or the force of law; and (3) the acts or policies of officials who by law or delegation possess final policymaking authority for the local government concerning the action alleged to have caused the particular constitutional or statutory violation at issue. *See Pembaur*, 475 U.S. at 480-81,106 S.Ct. 1292; *Monell,* 436 U.S. at 691, 98 S.Ct. 2018; *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 167-68, 90 S.Ct. 1598, 26 L.Ed.2d (1970); *Culbertson*, 790 F.3d at 628; *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc).

46.     Harris County has longstanding practices so persistent and widespread as to fairly represent government policy or force of laws that violate detainees' constitutional rights as exemplified by the numerous Plaintiffs who have filed suit for injuries or deaths that have occurred while in the custody of Harris County and the deficiencies identified by the Department of Justice.

47.     Sheriff Gonzalez possesses final policymaking authority for Harris County with respect to the Harris County Sheriff's Office which operates the Harris County Jail where the injury occurred.

---

[1] *Moore v. LaSalle Mgmt. Co.*, 41 F.4th 493, 509 (5th Cir. 2022); *Bishop v. Arcuri*, 674 F.3d 456, 467 (5th Cir. 2012); *see also Bartee v. Harris Cty.*, 2018 U.S. Dist. LEXIS 232945 *7-8 (S.D. Tex. 2018); *Releford v. City of Houston*, 2016 U.S. Dist. LEXIS 167749 *9 (S.D. Tex. 2016) (Ellison, K.).

48.     Harris County's policies or customs include:

-   County Jail's culture of violence overcrowding, understaffing, inadequate supervision
    and , and prevalent policies, practices, and customs encouraging officers to act in a
    "culture that quickly leads to physical altercation," to use more force than necessary to
    subdue an detainee, to use improper force techniques that are more likely than not to lead
    to serious bodily injury, that encourages an unnecessarily large number of officers to
    subdue detainees without any attempt to coordinate their respective efforts without
    repercussion, that encourages officers to utilize excessive force when the detainee fails to
    comply with verbal orders and/or physical forces without repercussion, that encourages
    officers to create  scenarios that victims cannot comply with and unnecessarily harm
    them without repercussion, that encourage officers to not adequately document uses of
    force, that encourages supervisors to not report or discipline uses of force, that encourage
    officers to use force on subdued and restrained detainees as a punishment and retaliation
    tactic, to use force as a means of sending a message to detainees despite no justifiable
    reason for the use of force, to fail to de-escalate or even attempt to use de-escalation
    techniques, and to forego reasonable non-violent techniques was a moving force in the
    injury of Plaintiff Spicer.

-   Harris County has encouraged this policy by repeatedly determining that the actions of
    jailers which constitute an unnecessary use of force were justified and within the
    guidelines of their policies, procedures, and their interpretation of the law.

-   Harris County's rampant practice and policies of understaffing and overcrowding the jail
    encouraged violence by officers against detainees, caused additional psychological and
    physical stresses on officers which leads to violent outbursts directed at detainee's,

prevented a  correct proportion of guards to carry out the necessary functions of the jail safely which encourages officers to use the quickest methods to get results out of detainees including excessive violence, makes the employees "overworked, moral is poor, bad decisions happen when [understaffing is] occurring," impedes Plaintiffs' access to medical care, impedes the officers ability to provide medical care timely, impedes the jailer's ability and/or willingness to observe and monitor detainees, impedes the jailer's ability and/or willingness to deter detainee on detainee or officer on detainee violence, reduces the ability of officers to escort detainees safely, and results in insufficient officers to carry out even minute functions of the jail safely, which resulted in the injury of Plaintiff.

- It was highly predictable that Harris County employees would follow these ongoing policies and practices. The known and obvious consequences of Harris County's policies and practices identified above is that detainees would suffer significant injuries and death. The DOJ, TCJS, and even the Sheriff as explained above have all been provided notice of the pitfalls and flaws of these policies and the likely consequences of those policies causing constitutional violations.

- Harris County acted with deliberate, callous, conscious, and unreasonable indifference to Plaintiff's constitutional rights by being aware of the known and obvious consequences of their policies and practices but continuing to authorize, tolerate, and ratify the implementation of the custom and practice resulting in the deaths and injuries of Plaintiffs.

- Each of the policies taken above and in context of each Plaintiffs' injuries were promulgated, enforced, ratified, and created by Harris County's policymakers including

Sheriff Gonzalez. Harris County has been aware of these policies, practices, and customs for the past 15 years.[2]

*Constructive or actual knowledge by policy maker*

49.     Sherriff Gonzalez was aware of the policy or customs of Harris County. On information and belief, there is persistent pattern and number of detainees that have filed grievances regarding the violations and treatment of detainees through the Harris County Jail's Kiosk. The electronic kiosk inside the jail is the the only for detainees to make formal complaints. Due to its electronic format, detainees have no way to keep a copy of their grievances or track them after they are submitted. A system that aids in hiding the constitutional violations running rampant within the Harris County Jail.

50.     Sheriff Gonzalez as well as Harris County Mayors and Sheriffs prior to Sheriff Gonzalez were made aware of the constitutional failures of the Harris County Jail beginning as early as 2009 when the Department of Criminal Justice began its investigation into the jail and making reports.[3]

51.     The DOJ report found that "For security matters in particular, the Jail lacks: (1) a minimally adequate system for deterring excessive use of force, and (2) an adequate plan for managing a large and sometimes violent detainee population" (pg 14).

52.     The DOJ report also noted that "As a result of systemic deficiencies including a lack of appropriate policies and training, the Jail exposes detainees to harm or risk of harm from excessive use of force" and "When supervisors review use of force incidents, they do not have ready

---

[2] Taken from Case No. 4:23-cv-02886; *Octavia Wagner v. Harris County, Texas*; In the US District Court for the Southern District of Texas- Houston Division.

[3] Plaintiff asks the Court to take judicial notice of the Department of Justice report from June 4, 2009 ("DOJ Report").

access to important evidence. Instead, they appear to rely excessively on officer statements to determine what happened during an incident" (pg. 15).

53.     In reviewing excessive force, the DOJ noted "use of force occurs at the Jail without adequate review, and Jail data regarding use of force levels cannot be considered reliable. We believe that the incidents noted during our review may only reflect part of what is really occurring within the facility" (pg. 15).   The DOJ further noted that "as a result of systemic deficiencies including a lack of appropriate policies and training, the Jail exposes detainees to harm or risk of harm from excessive use of force." *Id.*

54.     In terms of reviewing excessive force the DOJ also found "Notably, when force was investigated by supervisors, it appears that the supervisors often determined that staff's use of force was appropriate without obtaining independent medical review or multiple witness statements." *Id.*

55.     The DOJ report also put Harris County on notice regarding overcrowding exacerbating the problems in the Jail. Specifically, it was noted "The Texas Jail Commission's decision to grant the County waivers to house approximately 2000 detainees more than the Jail's original design capacity are concerning on its face….. (1) the Jail's crowded conditions currently exacerbate many of the constitutional deficiencies identified in this letter; and (2) the Jail needs a more comprehensive, systemic approach to dealing with a large and growing Jail population." (pg. 17).

56.     Despite the DOJ report being made in 2009, the same problems continue to persist. It was recently reported that "Back in September 2022, the Texas Commission on Jail Standards determined the Harris County Jail was violating statewide safety standards — a determination that has held true for more than a year now. Among the plethora of violations, commission found that the jail wasn't providing timely medical care and was struggling to maintain the state-mandated

staffing ratio of one detention officer for every 48 persons held in the

jail.(https://www.tcjs.state.tx.us/non-compliant-jails/)" [4]

57.     It was also reported that "Since December, the Texas Commission on Jail Standards

has been reducing the Harris County Jail's approved capacity by 144 beds each month in response to

persistent understaffing." *Id*.

58.     Alarmingly, 19 people died in the Harris County Jail in 2023, and 27 died in 2022,

"the highest number in nearly two decades, according to county records and data from the Texas

Justice Initiative." *Id.*

59.     The Houston Chronicle reviewed the growing use of force in the Harris County Jail

and reviewed "the Harris County Sheriff's Office's self-reported violent incident report data from

May of each year from 2020 through 2023. The records indicate that "use of force leading to bodily

injury" increased by nearly 200 percent from 2020 to 2023, with 17 incidents in May 2020, 39

incidents in May 2021, 48 incidents in May 2022 and 50 incidents in May 2023. Assaults increased

from 577 in May 2020 to 803 in May 2023—a 39 percent increase—over the same period."[5]

60.     It is evident that Harris County had actual or constructive knowledge of the

continued pattern, culture, and custom of constitutional violations at the Harris County Jail to

include violence, excessive force, inadequate medical care, and denial of medical care.

*Constitutional violation whose moving force is that policy or custom.*

61.     The constitutional rights of a pretrial detainee, like the Decedent, flow from the

procedural and substantive due process guarantees of the Fourteenth Amendment of the U.S.

Constitution. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996); *Valencia v. Wiggins*,

---

[4] https://www.houstonpublicmedia.org/articles/news/criminal-justice/2024/02/02/476187/state-officials-have-been-reducing-the-harris-county-jails-bed-c%E2%80%A6 .

[5] https://www.chron.com/news/houston-texas/article/harris-county-jail-texas-18208700.php

981 F.2d 1440, 1443-45 (5th Cir.), cert. denied, 113 S. Ct. 2998 (1993); *see also Salcido v. Harris Cty.*, 2018 U.S. Dist. LEXIS 169034 *102 (S.D. Tex. 2018) (finding issues of material fact precluded summary judgment on denial of medical care claim); *Wynn v. Harris Cty.*, 556 F. Supp. 3d 645, 655 (S.D. Tex. 2021) (Ellison, K.) (finding that, under the Due Process Clause of the Fourteenth Amendment, Harris County jail pre-trial detainees have a constitutional right to "basic human needs, including medical care and protection from harm").

62.     Indeed, it is well established that, when the State or arm of the State takes a person into custody and holds the person in a jail involuntarily, against its will, the U.S. Constitution imposes upon the State numerous corresponding duties to assume some responsibility for that person's safety and general well-being. Helling v. McKinney, 509 U.S. 25, 31 (1993). The ultimate constitutional duty of the government in those circumstances is to assume some responsibility for the safety and general well-being of persons whose state-occasioned confinement renders them unable to fend for themselves. Hare v. City of Corinth, 74 F.3d 633, 644 (5th Cir. 1996).

63.     The use of excessive force has long been held to be a constitutional violation. "In assessing a claim of excessive force, courts ask 'whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them.' " *Lombardo v. City of St. Louis, Missouri*, ––– U.S.––––, 141 S. Ct. 2239, 2241, 210 L.Ed.2d 609 (2021) (per curiam) (quoting **\*459** *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Factors such as "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting," as well as other relevant circumstances "may bear

on the reasonableness or unreasonableness of the force used." *Kingsley v. Hendrickson*, 576 U.S. 389, 397, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015). "The *Graham*, 490 U.S. at 396, 109 S.Ct. 1865.

64.     Harris County guards have a pattern of using excessive force that is not reasonable. Plaintiff was not resisting or acting in any way that could be seen as threat. As seen from the other incidents in the related lawsuits mentioned earlier, Harris County guards often use force that is unreasonable under the relevant circumstances. Harris County knew about these incidents because of lawsuits and internal complaints filed by offenders.

65.     For moving force purposes, a plaintiff need only show that the municipal action or inaction was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. Bartee v. Harris Cty., 2018 U.S. Dist. LEXIS 232945 *9 (S.D. Tex. 2018). A plaintiff meets the culpability by showing if the municipality adopted a policy with deliberate indifference to the "known or obvious consequences" that a constitutional violation would result. Id. Bartee v. Harris Cty., 2018 U.S. Dist. LEXIS 232945 *9 (S.D. Tex. 2018). The causal link in the present case is clear. Defendant's policies of encouraging violence, overcrowding, understaffing, inadequate supervision, and poor training as recited above were known to Defendant as demonstrated above and is as obvious that a constitutional violation would result because the DOJ report already put Defendant on notice that constitutional violations were occurring. In the present case, Defendants actions cause Plaintiff to be deprived of his constitutional right to be free from the use of excessive force when guards assaulted Plaintiff.

*Pattern of Incidents*

66.     Constitutional challenges by pretrial detainees may also be brought under a conditions of confinement theory. Salcido v. Harris Cty., 2018 U.S. Dist. LEXIS 169034 *125 (S.D.

Tex. 2018). A conditions of confinement theory would be based on "Harris County's policies, customs, and practices" such that it is an attack on the "general conditions, practices, rules, or restrictions of pretrial confinement." Id., *125. A plaintiff challenging jail conditions needs only demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs. Id. (emphasis added). This pattern may include incidents preceding and succeeding Plaintiff's incident. *Infra*.

67.     Plaintiff has demonstrated the pervasive pattern by incorporating by reference the facts of two related lawsuits in the Southern District;  Cause No. 4:23-cv-02886 and 4:23-cv-04366. Relevant incidents of excessive force used on pretrial detainees include:

> Jacob Pillowy

Mr. Pillowy arrived at the Harris County Jail on January 1, 2023. Multiple officers beat Mr. Pillowy resulting in significant blunt force trauma to his head, back, and extremities. The officers placed their weight onto Mr. Pillow's chest and back preventing him from breathing until they stopped beating him. He was then placed in a holding cell in medical with no cameras; a cell known for beatings of other inmates because there are no cameras. He was not checked on for hours and eventually died. The autopsy revealed that his death was caused by the excessive force used by officers, specifically blunt force trauma and compression (Cause. 4:23-cv-02886; Doc. 1, ¶ 41-55).

> Bryan Johnson

On August 5, 2023, officers used excessive force against Bryan Johnson in the Harris County jail when they pushed him in the back; tackled him to the ground; and then beat him for several minutes. The Officer then placed him in a holding cell for several hours and returned to beat him again. Mr. Johnson did not receive medical attention for several days. At that point just a cursory examination was conducted and injuries to his wrists from the handcuffs, facial bruising, and injuries

to his right leg were noted. He began to have trouble breathing on September 9, 2023, and was given an inhaler. Officers retaliated and took the inhaler away and returned it empty. He put in an emergency request for medical that was never responded to. On October 1, 2023 another inmate put in an emergency request, and by the time officers arrived Mr. Johnson could not function and later passed away (Cause. 4:23-cv-02886; Doc. 1, ¶ 56-65).

Jeremy Garrison

On April 23, 2023, Jeremy Garrison was beaten by several Harris County officers. He was told an investigation was happening, but as far as he knew, one was never conducted nor any officers disciplined. Then on May 20, 2023, Mr. Garrison was in the dayroom watching TV as he was allowed to do when a detention officer came in with a nurse and turned the TV off. Mr. Garrison asked why he did that and requested to speak to the sergeant. The detention officer got mad and said he would put Mr. Garrison back in his cell. Mr. Garrison continued to ask for the sergeant. The detention officer and nurse left and then the detention officer returned with more detention officers but no sergeant. An officer told him to go to his cell and he again asked to speak with a sergeant but did nothing else. He made no threats or take any threatening actions towards the officers. He was then sprayed with pepper spray at which time, he began to walk back to his cell. At that time, the original officer attacked Mr. Garrison while he was walking away and punched Mr. Grarison in the face. The other officer then joined in beating Mr. Garrison. He suffered severe injuries that required him to go to the hospital and obtain surgery. Doctors determined that the excessive force used by officers was what caused his injuries (Cause. 4:23-cv-02886; Doc. 1, ¶ 129-142).

Zachery Johnson

On June 6, 2023, Zachaery Johnson was in the Harris County Jail when he was attacked by another detainee. Officers did not interfere or prevent the attack. A few days later, several Harris

County officers attacked Mr. Johnson while he was in the Harris County Jail. Their attack was severe enough to cause Mr. Johnson to suffer seizures during the attack and to go in and out of consciousness despite not having a history of seizures. The hospital found that due to the assault by the officers, Mr. Johnson suffered a fractured skull, a fractured neck, a fractured spine, and fractured ribs. Additionally, Mr. Johnson's head injuries caused him to have blood on his brain. (Cause :23-cv-02886; Doc. 1, ¶ 143-152).

Kenneth Richard

Mr. Richards had complained over the phone to his mother about the conditions of the Harris County Jail. On April 27, 2023, when Mr. Richards suffered an anxiety attack, he was taken to the clinic. An officer came in while Mr. Richards was sitting in the clinic and restrained him with handcuffs and leg shackles. Two officers then came in and took Mr. Richards and pushed him into a holding cell which has a reputation for officer beatings and told him not to talk to his mother anymore. The two officers left only to return with an additional four officers. The officers, while Mr. Richards was restrained, then began to punch him to the ground, stomp on him and kick him for several minutes. Eventually, he was taken to the hospital where he was diagnosed with severe head injuries, injuries to his back and chest, blurred vision, memory loss, numbness in his extremities, and PTSD. Intubation was also required while he was in the hospital (Cause 23-cv-02886; Doc. 1, ¶ 153-162).

Jermiah Anglin

Jeremiah Anglin entered the Harris County Jail with known mental health conditions in November 2022 and was placed in the general population. For no known reason, on February 1, 2023, Mr. Anglin was put in handcuffs and an officer began kicking Mr. Anglin in the face, resulting in 6 teeth being knocked out. When he was seen at the hospital several screws had to be placed in his mouth (Cause 23-cv-02886; Doc. 1, ¶ 163-170).

Harrell Veal

On January 23, 2023, Mr. Veal was being escorted by a Harris County Jail officer to the 6th floor of the jail by elevator. While outside of the elevator and then again inside the elevator, outside the view of cameras, the officer lifted Mr. Veal's handcuffed arms high behind his back twisting and hurting Mr. Veal's shoulder and back. Then the officer grabbed the handcuffs and pulled them closer together causing significant pain in Mr. Veal's wrists. Then, around December 24, 2022, 11 months later, Mr. Veal was attacked either by officers or other detainees from behind and was kicked and punched numerous times in the back, head, and chest. He suffered severe injuries including injuries including broken ribs, bruised back, and numerous broken bones in his head. Ultimately the hospital had to place a plate in his head and reconstruct his eye socket (Cause 23-cv-02886; Doc. 1, ¶ 171-177).

John Coote

On February 7, 2023, Mr. Coote was threatened by another detainee. Mr. Coote tried to get the attention of Jail staff to request to be moved out of fear for his safety. Instead of an officer coming to speak with Mr. Coote privately, they spoke to him through an intercom within earshot of the detainee who threatened him, leaving Mr. Coote unable to cooperate and tell them who had threatened him. A few minutes later, the officers opened the main door which led to a vestibular area where there no cameras, unlike in the pod. Nobody came to the door, and Mr. Coote believed he was supposed to go through it and did. At that point. Multiple officers converged on Mr. Coote and began to assault him. Officers punched him in the head and face. When officers took him to medical, they tried to cover up the incident by telling the nurse it was a detainee on detainee fight. However, one officer reported he had punched Mr. Coote at least 6 times in the face, in contradiction to the claim that it was a detainee on detainee fight. On February 10, 2023, officers again used excessive force against

Mr. Coote when they slammed him against concrete floors and walls and punched him (Cause 23-cv-02886; Doc. 1, ¶ 178-191).

<u>Taylor Euell</u>

On September 29, 2022, Mr. Euell was at the Harris County Jail joint processing center, was in line holding his commissary bag which he kept his papers in. A Harris County Jail Officer for some unknown reason, snatched the bag from Mr. Euell. Mr. Euell asked for his bag back, at which point, the Harris County Officer slammed Mr. Euell's face against a wall and injuring his eye. He then proceeded to twist Mr. Euell's wrist, breaking his hand, while handcuffing him. When Mr. Euell requested medical, he was told he better not say anything or the officer would beat him again (Cause 23-cv-02886; Doc. 1, ¶ 233-245).

68.     Plaintiff is also aware of constitutional violations suffered by detainees, Oscar Ochoa, Joseph Babino, and Henry Kmiec while they were in custody. In addition, Plaintiff has shown that by Harris County's own reporting, the number of incidents of violence and deaths inside Harris County Jail has been increasing in recent years.

**Failure to Train and/or Implement and/or Supervise Proper Policies and Procedures**
**By the Harris County Sheriff's Department**
**Count II**
**42 U.S.C. § 1983**

69.     Plaintiff incorporates by reference the foregoing and succeeding paragraphs as if set forth herein. Prior to April 5, 2022, Harris County knew or should have known that Defendants Tyree Simpson, John Vickers, Andrew Pena, and Sgt. Arthur Hagar exhibited a pattern of escalating encounters with the public.

70.     Plaintiff would show that Harris County's response was to require all officers to take courses or a similar type of training to de-escalate a hostile situation. This particular

training helps officers handle mental health crises, de-escalation techniques and how best to interact with someone in a state of aggression.

71.     Defendants Tyree Simpson, John Vickers, Andrew Pena, and Sgt. Arthur Hagar and other correctional officers at the scene of the incident were acting under color of law and acting pursuant to customs, practices and policies of the Harris County Sheriff Department in regard to the use of excessive force as authorized and/or ratified by the Policymakers, specifically the Harris County Sheriff's Department.

72.     Plaintiff Elton Spicer was deprived of rights and privileges secured to them by the United States Constitution and by other laws of the United States, by the Harris County Sheriff's Department failing to provide proper training, adequate supervision or discipline when dealing with individuals such as Elton Spicer in violation of 42 U.S.C. §1983 and related provisions of federal law and in violation of the above cited constitutional provisions.

73.     With respect to the claims made the basis of this lawsuit, Harris County failed to adequately train its correctional officers on how to deal with individuals in crisis, de-escalation, and/or the use of excessive force. The failure to train its correctional officers in a relevant respect reflects a deliberate indifference of Harris County to the rights of the County Jail's inhabitants and is actionable under 42 U.S.C. § 1983.

74.     With respect to the claims made the basis of this lawsuit, Harris County failed to provide adequate implementation policies and supervision its correctional officers on how to deal with individuals in crisis, de-escalation and/or the use of excessive force. The failure to train its correctional officers in a relevant respect reflects a deliberate indifference of Harris County to the rights of the County Jail's inhabitants and is actionable under 42 U.S.C. § 1983.

75.     Harris County's failure to adequately supervise their correctional officers in the implementation of an adequate policy for its officers on how to deal with individuals and the subsequent use of excessive force reflects deliberate indifference by the Policymakers and reckless and conscious disregard for the obvious risk that correctional officers would use excessive force on detainees and made the violations of Plaintiff Elton Spicer's constitutional rights.

76.     Plaintiff would show that Defendants' actions were the result of, or within the scope of, wrongful and reckless customs, culture, policies, practices and/or procedures for which Harris County knew or should have known but never provided the requisite and proper training. Harris County had been put on notice by the DOJ report in 2008, the reports by the Texas Jails Commission, lawsuits that have been filed against Harris County, and by internal complaints/grievances made by detainees at the Harris County Jail.

77.     On information and belief, Defendants Tyree Simpson, John Vickers, Andrew Pena, Sgt. Arthur Hagar and Harris County, acting through official policies, practices, and customs, and with deliberate, callous, and conscious indifference to the constitutional rights of Ochoa and Spicer and failed to implement and/or enforce the policies, procedures; and practices necessary to provide constitutionally adequate protection and assistance to Plaintiff Elton Spicer during the incident and implemented policies, procedures, and practices which actually interfered with or prevented with or prevented Plaintiff from receiving the protection, assistance and care they deserved.

78.     For instance, the following conduct, policies, and customs, inter alia, by Defendants violated Plaintiff's constitutional rights:

a.     Harris County's failure to adequately train, supervise or discipline its correctional

officers who commit a wrongful act or attempt to cover-up a wrongful act of a fellow
officer;

b.     Defendants' policy on the proper use of excessive force;

c.     Defendants' inadequate training on how to deal with or interact with detainees;

d.     Using excessive force against Plaintiff Elton Spicer while he was unarmed;

e.     Using excessive force against Plaintiff Elton Spicer although they posed no
       immediate threat;

79.     In addition, Defendant Harris County, as applicable, failed and refused to
implement customs, policies, practices, or procedures, and failed to train its personnel
adequately on the appropriate policies, practices, or procedures regarding the proper use of
excessive force. In so doing, Defendants Tyree Simpson, John Vickers, Andrew Pena, and
Sgt. Arthur Hagar knew that they were acting against the clear dictates of current law and
knew that as a direct consequence of their deliberate decisions, the very situation that
occurred.

80.     Harris County's failure to properly train and discipline its deputies was the
proximate cause of the violations of Plaintiffs' constitutional rights.

### Excessive Force by Defendants (Individually and in their official capacity)
### COUNT III
### 42U.S.C. § 1983; Violation of 14th Amendment

81.     Plaintiff incorporates by reference the foregoing and succeeding paragraphs as if
set forth herein. Plaintiff would show that Defendants' actions on the occasion in question were
wrongful, malicious, and reckless in depriving Plaintiff of his constitutional rights, as alleged
more fully below.

82.     Plaintiff would show that at all times material hereto, each of the Defendants had a duty to avoid the infliction of unjustified bodily injury to Plaintiff Elton Spicer; to protect his bodily integrity; and to not trample on his constitutional rights.

83.     Defendants Tyree Simpson, John Vickers, Andrew Pena, and Sgt. Arthur Hagar, without justification and the need to do so, used excessive force described above to injure Plaintiff Elton Spicer.

84.     Defendants Tyree Simpson, John Vickers, Andrew Pena, and Sgt. Arthur Hagar were not provoked when they attacked Plaintiff Elton Spicer for no lawful or justifiable reason. The excessive force used by Defendants was not reasonable, justified nor was it necessary under the circumstances.

85.     Defendants Tyree Simpson, John Vickers, Andrew Pena, and Sgt. Arthur Hagar's actions were not objectively reasonable because they followed a procedure designed to inflict excessive force in restraining individuals in a non-life-threatening situation.

86.     Plaintiff would show that Defendants Tyree Simpson, John Vickers, Andrew Pena, and Sgt. Arthur Hagar denied Plaintiff Elton Spicer his right to be free from the use of excessive force in violation of the Fourteenth Amendment to the United States Constitution.

87.     The force used by Defendants Tyree Simpson, John Vickers, Andrew Pena, and Sgt. Arthur Hagar was unnecessary, excessive, and unreasonable under the circumstances, as Plaintiff Elton Spicer did not pose an immediate threat to the safety of Defendants or others and the use of such excessive force was unnecessary. Plaintiff had not made any threatening gestures, movements, or verbalized any threats. The use of force was objectively unreasonable and not rationally related to a legitimate nonpunitive governmental purposes

or was excessive  in relation to that purpose.

88.     Defendants Tyree Simpson, John Vickers, Andrew Pena, and Sgt. Arthur Hagar embarked on a willful, malicious, reckless, and outrageous course of conduct that was intended to cause and caused Plaintiff Elton Spicer to suffer extreme and severe physical, mental, and emotional distress, agony, and anxiety.

89.     Harris County is liable because it has established policies and practices which allow officers to demean, harass, and beat detainees without any regard nor worry.

90.     As a result of these Constitutional violations to Plaintiff Elton Spicer and the injuries they sustained, Plaintiffs seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## Failure to Adequately Supervise or Discipline and Ratification
## COUNT IV

90.     Plaintiff incorporates by reference the foregoing and succeeding paragraphs as if set forth herein

91. On Plaintiffs governmental  liability  claim  against  Harris  County

for failing to supervise and/or discipline its correction and detention officers for their violations

and the resulting of supervision in the following manners:

a.     Harris County failed to adequately supervise and/or discipline its employees in handling usual and recurring situations in which they dealt;

b.     Harris County was deliberately indifferent to the need to supervise and/or discipline its correctional officers and/or employees adequately; and

c.     the failure to adequately supervise and/or discipline its correctional officers proximately caused the deprivation of Plaintiffs' constitutional rights.

64. As a direct and proximate result of Harris County's failure to adequately  supervise or

**24 |** P a g e
P l a i n t i f f ' s   F i r s t   A m e n d e d   C o m p l a i n t

discipline its correctional officers, Plaintiff has suffered damages.

92. Additionally, and in the alternative, the conduct of Defendants Tyree Simpson, John Vickers, Andrew Pena, and Sgt. Arthur Hagar were done with malice. As such, Plaintiff requests punitive and exemplary damages to deter this type of conduct in the future. In the alternative, such heedless and reckless disregard of Plaintiff's rights, safety, and welfare are more than momentary thoughtlessness, inadvertence, or misjudgment. Such unconscionable conduct goes beyond ordinary negligence, and as such Plaintiffs request punitive and exemplary damages be awarded against Defendants Tyree Simpson, John Vickers, Andrew Pena, Sgt. Arthur Hagar, and Harris County in a sum that is within the jurisdictional limits of this court.

## V.
## DAMAGES ALL DEFENDANTS

93. Plaintiff incorporates by reference paragraphs 1 through 52 as if fully set forth herein.

94. Defendants' acts and/or omissions were a proximate cause of the injuries to Plaintiffs.

95. As a direct and proximate result of Harris County's failure to adequately supervise or discipline its correctional officers, Plaintiff has suffered damages.

96. Additionally, and in the alternative, the conduct of Defendants Tyree Simpson, John Vickers, Andrew Pena, and Sgt. Arthur Hagar were done with malice. As such, Plaintiffs request punitive and exemplary damages to deter this type of conduct in the future. In the alternative, such heedless and reckless disregard of Plaintiffs rights, safety, and welfare are more than momentary thoughtlessness, inadvertence, or misjudgment. Such unconscionable conduct

goes beyond ordinary negligence, and as such Plaintiffs request punitive and exemplary damages be awarded against the Defendant in a sum that is within the jurisdictional limits of this court.

**VI.**
**DAMAGES ALL DEFENDANTS**

97.     Plaintiff incorporates by reference the foregoing and succeeding paragraphs as if set forth herein. Defendants' acts and/or omissions were a proximate cause of the following Injuries suffered by Plaintiff and decedent:

a.     Actual damages;

b.     Loss of affection, consortium, comfort, financial assistance, protection, affection, and care;

c.     Pain and suffering and mental anguish suffered by Plaintiff;

d.     Mental anguish and emotional distress suffered by Plaintiff;

e.     Loss of quality of life;

f.     Loss of service;

h.     Loss of future earnings and contributions to Plaintiff;

1.     Exemplary and punitive damages as well as costs of court;

J.     Pursuant to 42 U.S.C. §1988, and other applicable laws, Plaintiff should be awarded reasonable attorney's fees for the preparation and trial of this cause of action, and for its appeal, if required;

k.     Prejudgment interest; and

l.     Post judgment interest.

98.     Plaintiff seeks unliquidated damages in an amount that is within the

jurisdictional limits of the court.

## VII.
## COSTS AND ATTORNEY FEES

99. Plaintiff incorporates by reference paragraphs 1 through 52 as if fully set forth

herein. Plaintiffs are entitled to an award of attorney fees and costs under 42 U.S.C. § 1

988(b). As such, Plaintiffs request the Court to award costs and attorney fees incurred in

Plaintiffs prosecution of this litigation.

## VIII.
## JOINT AND SEVERAL LIABILITY

100.    Plaintiff incorporates by reference the foregoing and succeeding paragraphs as if

set forth herein. Plaintiffs would show that the Defendants were jointly and severally liable for the

gross negligence, which was the proximate cause of Plaintiffs injuries.

## VX.
## CONDITIONS PRECEDENT

101.    Plaintiff reserves their rights to plead and prove the damages to which they are

entitled to at the time of trial. All conditions to Plaintiff's recovery have been performed or

have occurred.

## X.
## TRIAL BY JURY

102.    Plaintiffs demand trial by jury.

## XI.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to

appear and answer herein; that upon final trial hereof Plaintiff has and recovers judgment from

Defendants; actual damages, exemplary damages, pre-judgment interest at the legal rate; interest on said judgment at the legal rate; costs of court; and such other and further relief, both general and special, at law and in equity, to which Plaintiffs are justly entitled.

Respectfully submitted,

Shantelle Jones

_____

Tanika J. Solomon
Texas Bar No. 24057713
Shantelle L. Jones
Texas Bar No. 24136932
S.D. Bar No. 3866430
Email: attorney@tjsololaw.com
shantelle@tjsololaw.com
2120 Welch Street
Houston, Texas 77019
Tel. (713) 640-5956
Fax. (713) 640-5944
Attorneys for Elton Spicer

## CERTIFICATE OF SERVICE

I hereby certify that on this the 19th day of July 2024, I electronically served a copy of

*Plaintiff's First Amended Complaint* and this document has been served on all parties or their

attorney(s) of record—who are listed below—in accordance with Fed. R. Civ. P. 5(b) as

follows:

Via the Court's electronic filing notification system:

SUZANNE BRADLEY
Senior Assistant County Attorney
ATTORNEY-IN-CHARGE
State Bar No. 00793375
Fed. Bar No. 24567
Tel: (713) 274-5330 (direct)
Suzanne.Bradley@harriscountytx.gov
FRANK J. FORD
Assistant County Attorney
ATTORNEY TO BE NOTICED
State Bar No. 24012642
Fed. Bar No. 565385
Tel: (713) 274-5166 (direct)
frank.ford@harriscountytx.gov
OFFICE OF THE HARRIS COUNTY
ATTORNEY
1019 Congress
Houston, Texas 77002


Shantelle Jones

_____
Shantelle L. Jones